UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  11-20631-CR-SEITZ

UNITED STATES OF AMERICA,
         Plaintiff,
vs.

JAUMON LEWIS,
         Defendant.
_____/

## TIME SENSITIVE MOTION FOR COMPASSIONATE RELEASE

Mr. Jaumon Lewis, through the undersigned counsel, submits this Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1), in support thereof states as follows:

Mr. Lewis is currently incarcerated at FCI Coleman Medium, where there is a rapidly spreading outbreak of Covid-19.  On Tuesday, undersigned counsel was informed that there were 65 active inmate cases, as well as 4 staff, today there are **85 active inmate cases and 8 staff**.[1]  Mr. Lewis is 40 years old and suffers from multiple serious health conditions that the Centers for Disease Control classifies as putting people of *any age* at increased risk for *severe illness* if they contract Covid-19, including: *Type 2 diabetes*, *serious heart conditions* (he has had two heart attacks, one in 2008 and one in 2010, and has ongoing coronary

---

[1] Fed'l Bureau of Prisons, Covid-19 Coronavirus Cases available at https://www.bop.gov/coronavirus/ (last visited July 9, 2020).

atherosclerosis), and **morbid obesity** (which the CDC cites as a risk factor with a BMI of over 30, Mr. Lewis has a BMI of 50).[2] Mr. Lewis also has **chronic obstructive sleep apnea** (he sleeps with a prescribed CPAP machine at Coleman) and **hypertension**, as well as myriad other health issues.  The risks posed by the potential complications of Mr. Lewis's serious illnesses, together with the current outbreak of Covid-19 at the prison where he is housed, constitute extraordinary and compelling reasons for his release. The risk is not speculative, it is real, immediate and serious.

The CDC has a short list of seven medical conditions that conclusively place someone seriously at risk,[3] and Mr. Lewis has at least three of those.  Additionally, the CDC lists hypertension as an additional potential complicating factor that may put someone at an increased risk for severe illness.[4] Mr. Lewis is currently in grave danger.  Nationwide, at least 94 inmates and 1 staff member have died in the custody of the Federal Bureau of Prisons. The risk is real and serious for Mr. Lewis.

The request is timely and Mr. Lewis has exhausted the administrative requirements of the compassionate release statute.   Mr. Lewis made a request

---

[2] An excerpt of his BOP medical records is being filed separately under seal as *Exhibit A*.
[3] *See* Center for Disease Control (CDC), *Covid-19, People who are at Higher Risk for Severe Illness*, updated June 25, 2020 available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last accessed July 9, 2020).
[4] *Id*.

for compassionate release on May 29, 2020 to the warden at Coleman. A copy of the request is attached hereto as *Exhibit C*. On the bottom of the page, it is marked received as of June 3, 2020 by the warden or regional director. The Warden responded the next day, June 4, 2020, to deny the request. "The plain language of § 3582(c)(1)(A), as amended by the First Step Act, gives the Court authority to act 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf ***or*** the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. York*, 3:11-CR-76, 2019 WL 3241166, at *5 (E.D. Tenn. July 18, 2019) (quoting 18 U.S.C. §3582(c)(1)(A)) (emphasis added in opinion); *see also Kennedy Walker v. United States*, 16-cv-21973-RNS, D.E. 44 (S.D.Fla, May 8, 2020). Thus, upon the lapse of 30 days from the request to the warden, Mr. Lewis's petition in this Court is ripe for review. The warden received the request in this case on June 3, 2020 and because more than 30 days have elapsed, Mr. Lewis's petition is timely filed.

Mr. Lewis has been incarcerated in this case since August 2011. He was originally sentenced to 180 months (or 15 years) plus 3 years of supervised release. Of that, he has served almost 9 years in real time and almost 11 years in BOP time (i.e., with credit for good time added in). His release date is July 16, 2024. With 4 years left on a 15 year sentence, it is accurate to say he has completed more than

2/3 of his sentence.  While incarcerated, he has received only one incident report, which occurred 8 ½ years ago at FDC Miami prior to his sentencing in this case. He has paid his financial obligations, worked steadily and completed vocational training in horticulture, culinary arts, custodial maintenance, as well as reentry seminar and numerous recreation programs.  Mr. Lewis would also like to enroll in CARE Court upon his release if offered the opportunity to do so.

If released, Mr. Lewis would reside with his fiancé, Vivian Smith, and her teenage children (aged 19 and 15).  Jaumon and Vivian have known each other since they were teenagers, for around 23 years, and have been romantically involved off and on throughout that time. Vivian works for Amazon as a packager and sealer. She has been employed there for the last four years.   Her 19 year old works there with her, her 15 year old is in high school. Ms. Smith rents her 3 bedroom, 2 bathroom townhome here in Miami and has space for Mr. Lewis to quarantine for two weeks upon his release, if necessary.   Ms. Smith has also indicated that she will make sure Mr. Lewis gets the medical attention he needs if he is released and that their first order of business will be to make sure Mr. Lewis is able to have access to healthy food and physical activity so that he can begin the road to recovery from his health problems.  Mr. Lewis also, unprompted, wrote the letter attached as Exhibit D to the Court.  It explains in further detail how he has used his time incarcerated and what he intends to do upon his release.

For all of the reasons stated herein and to prevent Mr. Lewis's sentence from becoming a death sentence, he respectfully requests that the Court reduce his sentence to time served, and that he begin serving his 3 years of supervised release as soon as possible.

## **Memorandum of Law**

Under the First Step Act, the Court may grant an inmate's motion for a sentence reduction if three requirements have been satisfied.

*First*, the Court must determine that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

*Second*, the Court must determine either that (a) the defendant exhausted available administrative remedies "to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or that (b) 30 days have elapsed since the receipt of such a request by the warden of the defendant's facility. *Id.*

*Third*, the Court may reduce a defendant's sentence after determining that the reduction is consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a). *Id.*

All three of these requirements are met in this case, as is explained in more detail below.

## I.   There are extraordinary and compelling reasons justifying Mr. Lewis's release

Mr. Lewis is requesting compassionate release under the extraordinary and compelling circumstances of his serious health conditions in conjunction with the outbreak of Covid-19 at the BOP, including at least **85** active cases at Coleman Medium, and the very real risk that he will face a severe, and quite possibly fatal, infection if he remains incarcerated at this time.  Ninety-four people have already died in BOP custody from Covid-19.  The risk to Mr. Lewis is immediate and real.

The compassionate release statute grants the district court authority to reduce a defendant's term of imprisonment where there were "extraordinary and compelling reasons" warranting such reduction. 18 U.S.C. § 3582(c)(1)(A).  Black's Law Dictionary defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common." *Extraordinary*, Black's Law Dictionary (11th ed. 2019). It defines "compelling need" as a "need so great that irreparable harm or injustice would result if it is not met." *Compelling Need*, Black's Law Dictionary (11th ed. 2019). The current unprecedented pandemic is probably the most extraordinary circumstances in our lifetime, and Mr. Lewis's particularly vulnerability to it is clearly a need so great that the ultimate irreparable harm is possible if he is not granted compassionate release.   Thus, Mr. Lewis's particular circumstances present "extraordinary and compelling reasons" to reduce his sentence.

6

## A. Mr. Lewis's health presents an extraordinary and compelling reason to order his release from BOP custody

Mr. Lewis's health issues are multiple, serious and almost all of them put him at an enhanced risk for serious complications of Covid-19.  In the past three months at least ***94 inmates have died in BOP custody as a result of Covid-19, and the death toll is rising daily***.  As documented in Exhibit A, Excerpt of BOP medical records, Jaumon Lewis has a history of: (1) diabetes Type II, insulin dependent; (2) serious heart disease, including heart attacks listed as "acute myocardial infarction" in 2010 and 2008, and ongoing coronary atheroscleriosis, which is blocked arteries, and an entry for coronary angioplasty with a stent occluded listed as current; (3) obesity, with a BMI of 50, (4) hypertension, and (5) obstructive sleep apnea.  *Exhibit A,* BOP List of Current Health Problems, dated May 19, 2020 and filed separately under seal.

The Center for Disease Control notes that while everyone is at risk if they are exposed to the virus, some people are more likely than others to become *severely ill*, which means they may require hospitalization, intensive care, or a ventilator to help them breathe, or they may die. [5]  Regardless of age, the CDC has identified specific illnesses that increase that risk, including:  serious heart disease, obesity (BMI of 30

---

[5] *See* Center for Disease Control (CDC), *Covid-19, People who are at Higher Risk for Severe Illness*, updated June 25, 2020 available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last accessed July 9, 2020).

or higher); and diabetes.[6] Mr. Lewis has not just one, but at least four of the CDC listed risk factors. *Exhibit A*. If he contracts Covid-19, he is undeniably at risk for serious complications or death.

Courts in the Southern District of Florida have joined courts across the country in repeatedly holding that if an inmate has a chronic medical condition that has been identified by the CDC as elevating an inmate's risk of becoming seriously ill from Covid-19, that condition may constitute "extraordinary and compelling reasons" to grant compassionate release. *See, e.g., United States v. Lima*, No. 16-cr-20088-RNS, DE 137 (S.D. Fla. May 11, 2020) (collecting cases); *see also United States v. Curington*, 12-20115-MGC (S.D. Fla. July 6, 2020) (granting compassionate release to a woman with obesity, hypertension and emphysema who had served 9 years of 200 month sentence as a career offender); *United States v. Welch*, 09-cr-60212-KAM (S.D.Fla. May 21, 2020) (defendant released was an armed career criminal who had served 10 years of a 15 year sentence, suffered from diabetes and asthma); *United States v. Feucht*, 11-60025-DMM (S.D. Fla. May 28, 2020) (granting compassionate release to a 63 year old man with diabetes, hypertension, hyperlipidemia, obesity and edema), *United States v. Rico*, 19-CR-20375-DPG, DE 51 (S.D. Fla. May 14, 2020) (granting compassionate release, over objection, to 75-year old defendant with

---

[6] CDC, *People of Any Age with Underlying Medical Conditions*, updated June 25, 2020 available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html  (last accessed July 9, 2020).

hypertension, COP, asthma, and cachexia, among other conditions); *United States v. Barbuto*, No. 18-cr-80122-DMM, DE 314 (S.D. Fla. Apr. 28, 2020) (granting compassionate release, over objection, due to defendant's hypertension, weight gain, and untreated polyps, among other conditions); *United States v. Sanchez*, No. 95-cr-421-MGC, DE 421 (S.D. Fla. Apr. 27, 2020) (granting compassionate release, over objection, from life sentence to 76-year old drug conspiracy defendant with various underlying medical conditions); *United States v. Suarez*, No. 18-cr-20175, DE 180 & DE 185 (S.D. Fla. Apr. 20, 2020) (granting compassionate release, over objection, to defendant with diabetes, asthma, and cancer in remission); *United States v. Minor*, No. 18-80152-DMM, DE 35 (S.D. Fla. Apr. 17, 2020) (granting opposed compassionate release to 71-year old with diabetes, hyperlipidemia, and a history of strokes, among other issues); *United States v. Platten*, No. 08-cr-80148-DMM, DE 155 (S.D. Fla. April 17, 2020) (granting compassionate release over objection to defendant with 8 years remaining of sentence, due to his age, cancer, and serious heart condition); *United States v. Hope*, No. 90-cr-06108-KMW, DE 479:7-8 (recognizing that "Covid-19 has dramatically altered the context in which courts are considering compassionate release requests," and granting release, over objection, in part because "the current pandemic must be seen to alter" whether defendant's medical conditions are "severe enough to warrant compassionate release").

Specifically, and despite his relatively young age, Mr. Lewis has had multiple heart attacks and continues to suffer from serious heart disease. The CDC found that

of the "Covid-19 patients admitted to the ICU… 29% had heart disease."[7]   One possible reason for the increased risk of serious illness or death for individuals with underlying heart disease is the use of common blood pressure medications called angiotensin converting enzyme (ACE) inhibitors (such as Lisinopril, which Mr. Lewis takes) and angiotensin receptor blockers (ARBs).[8] "These medications have been proposed as a possible factor in the increased incidence of Covid-19 in people with high blood pressure." *Id.* "That's because of the observation that the coronavirus attaches to the ACE2 receptor, which is found in lung and heart tissue." *Id.* "People who take ACE inhibitors and ARBs produce increased numbers of these receptors, raising the question of increased susceptibility to infection." *Id.* While the link between Lisinopril and other blood pressure medications and increased susceptibility to Covid-19 is still being studied, it is unquestionably true that individuals with heart disease are at increased risk of contracting Covid-19 and developing serious complications or death.

---

[7] Allison Aubrey, *Who's Sickest from Covid-19?  These Conditions Tied to Increased Risk*, NPR (Mar. 31, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/03/31/824846243/whos-sickest-from-covid-19-these-conditions-tied-to-increased-risk

[8] Dara K. Lee Lewis, *How does cardiovascular disease increase the risk of severe illness and death from Covid-19?*, Harvard Health Blog, *available at* https://www.health.harvard.edu/blog/how-does-cardiovascular-disease-increase-the-risk-of-severe-illness-and-death-from-covid-19-2020040219401.

Mr. Lewis's general poor health easily puts him into the high risk category for Covid-19, and his history of heart attacks makes that risk even more serious. *C.f. United States v. Cassidy*, 2020 WL 2465078 at *7 (W.D.N,Y, May 13, 2020) (court noting that heart attack history put defendant in an even higher risk category and finding that incarceration in a "hotbed" of Covid merits release in a case that otherwise wouldn't). Courts across the country have ordered compassionate release during this pandemic based on chronic heart conditions. *See, e.g., United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020) (finding extraordinary and compelling circumstances where the defendant suffered from Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma).

Next, it is also indisputable that Mr. Lewis's hypertension, obesity and diabetes puts him at a much greater risk than the average person. The first peer-reviewed, large-scale study of American Covid-19 hospital patients confirmed that among hospitalized patients, 57% had high blood pressure, 41% were obese, and just over a third had diabetes. [9] Further, is well documented that hypertension issues are associated with increased risk of Covid-19 infection and worse outcomes in lung

---

[9] Safiya Richardson, Jamie S. Hirsch, Mangala Narasimhan, et al, "Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized With Covid-19 in the New York City Area," *Journal of American Medical Ass'n*, (Apr. 22, 2020), available at https://jamanetwork.com/journals/jama/fullarticle/2765184.

injury and mortality. *See United States v. Barber*, No. 6:18-CR-00446-AA, 2020 WL 2404679, at *4 (D. Or. May 12, 2020) citing Ernesto L Schiffrin, John M Flack, Sadayoshi Ito, Paul Muntner, & R Clinton Webb, *Hypertension and Covid-19*, American Journal of Hypertension, Volume 33, Issue 5, May 2020, at 373–374.

Furthermore, courts across the country have found that defendants, like Mr. Lewis, with obesity, present extraordinary and compelling reasons for relief. *See e.g., United States v. Handy*, 3:10-cr-00128-RNC-8, 2020 WL 2487371 (D. Conn.May 14, 2020); *United States v. Barber*, 6:18-cr-00446-AA, 2020 WL 2404679 (D.Or. May12, 2020); *United States v. Hunt*,2:18-cr-20037-DPH-DRG, 2020 WL 2395222 (E.D. Mich.May 12,2020); *United States v. Ullings*,1:10-cr-00406-MLB-1,2020WL 2394096 (N.D.Ga. May12, 2020); *United States v. Foreman*, 3:19-cr-00062-VAB-1, 2020 WL 2315908 (D. Conn. May11, 2020); *UnitedStates v. Jenkins*, 99-cr-00439-JLK-1, 2020 WL 2466911 (D.Co. May 8, 2020); *United States v. Quintero*, 6:08-cr-06007-DGL-1,2020 WL 2175171 (W.D. N.Y. May 6, 2020); *United States v. Howard*, 4:15-cr-00018-BR-2, 2020WL 2200855 (E.D.N.C. May 6, 2020); *United States v. Lacy*, 3:15-cr-30038-SEM-TSH-1,2020 WL 2093363(C.D.Ill. May 1, 2020); *United States v. Ardila*, 3:03-cr-00264-SRU-1, 2020 WL 2097736 (D.Conn.May 1, 2020); *United States v.Delgado*, 3:18-cr-00017-VAB,2020 WL 2464685 (D. Conn.Apr.30, 2020);*United Statesv. Dillard*, 1:15-cr-170-SAB, Dkt. No. 71 (D. Idaho Apr. 27,2020);*United Statesv. Joling*, 6:15-cr-00113-AA-1, 2020 WL 1903280 (D.Or.Apr. 17,2020); *United Statesv. Trent*, 3:16-cr-00178-CRB-1,2020 WL 1812242 (N.D. Cal. Apr.9, 2020);

*United States v. Zukerman*, 1:16-cr-00194-AT-1,2020 WL 1659880 (S.D. N.Y. Apr. 3,2020).

In addition, Mr. Lewis's sleep apnea presents yet another risk factor. Sleep apnea can cause difficulty breathing, and respiratory impairment is one of the primary known symptoms of Covid-19. Mr. Lewis's sleep apnea is so severe that he has a prescribed CPAP machine from the BOP. Again, numerous courts have cited sleep apnea as a risk factor in granting compassionate release over the past four months. *See, e.g.,* U*nited States v. Hunt*, No. 2:18-cr-20037-DPH-DRG, 2020 WL 2395222 (E.D. Mich. May 12, 2020); *United States v. Amarrah*, No. 5:17-cr-20464-JEL-EAS-1, 2020 WL 2220008 (E.D. Mich. May 7, 2020); *United States v. Delgado*, No. 3:18-cr-00017-VAB, 2020 WL 2464685 (D. Conn. Apr. 30, 2020); *United States v. Brown*, No. 4:05-cr-00227-RP-CFB-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020); *United States v. Saad*, No. 16-20197, 2020 WL 2251808 (E.D. Mich. May 5, 2020); *United States v. Harper*, No. 7:18-cr-00025-EKD-JCH-1, 2020 WL 2046381 (W.D. Va. Apr. 28, 2020); *United States v. Scparta*, No. 1:18-cr-00578-AJN-1, 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020); *United States v. Gross*, No. 1:15-cr-00769-AJN-3, 2020 WL 1673244 (S.D. N.Y. Apr. 6, 2020); *United States v. Powell*, No. 1:94-cr-316-ESH, 2020 WL 1698194 (D.D.C. Mar. 28, 2020).

In sum, the risk to Mr. Lewis is real and for people like Mr. Lewis who contract Covid-19, if death doesn't result, very extensive care is likely to be needed. Most people in the higher risk categories, who contract Covid-19 will require more

advanced support: positive pressure ventilation, and in extreme cases, extracorporeal mechanical oxygenation.  Such care requires highly specialized equipment in limited supply as well as an entire team of care providers, including but not limited to 1:1 or 1:2 nurse to patient ratios, respiratory therapists and intensive care physicians. For high risk patients who do not die from Covid-19, a prolonged recovery is expected to be required, including the need for extensive rehabilitation for profound deconditioning, loss of digits, neurological damage, and loss of respiratory capacity.

### B. Covid-19 is affecting jail populations in a disproportionate and terrifying way

The Court is well aware of the public health crisis caused by the coronavirus and the resulting shut down of our courts, businesses, and most social functions as we formerly knew them.  Prisons are being affected even more severely than the general population.  As of July 9th, within just the Federal Bureau of Prisons, at least 94 inmates and 1 staff member has died from Covid-19, and over 7,395 inmates have tested positive.[10]

---

[10]   *See* Fed'l Bureau of Prisons, Covid-19 Resources available at https://www.bop.gov/coronavirus (last accessed July 10, 2020). And, these numbers are surely an undercount, because the BOP is not yet conducting widespread testing of asymptomatic inmates. The Associated Press has reported that, as of April 29th, ***more than 70% of the BOP inmates tested for Covid-19 have been positive***.  That is as compared with about 10% of the general population that has been tested. Which supports the idea that nationwide the BOP is only testing very, very sick inmates and there are many more active cases of Covid-19 that are not being counted.

Federal inmates are contracting Covid-19 at a much higher rate than the general population.  And despite the reassurances given by the BOP, Courts have repeatedly taken notice of the growing evidence of the BOP's chronic mismanagement of its vulnerable population during the Covid-19 pandemic. *See Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the "unacceptable" percentage of positive tests at FCI Elkton and BOP's "ineffective[ness]…at stopping the spread").  The *Wilson* court criticized the BOP for having "made only minimal effort to get at-risk inmates out of harm's way" and being out of compliance with a previous court order on its use of the administrative discretion provided by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and recommendations for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *Id.* at *2.

Coleman Medium, where Mr. Lewis is housed in ***currently experiencing an outbreak of Covid-19***.  This is not a case where we can credit the BOP with having effectively controlled the spread.  Every day undersigned counsel checks the numbers on the BOP webpage the numbers have risen.  We must look at the realities of the situation and understand that Mr. Lewis is indeed in grave and present danger of contracting the virus and suffering severe complications.

According to public health experts, social distancing measures are the most effective way to combat the rapid spread of Covid-19 and prevent illness. "This is especially important for people who are at higher risk of getting very sick." CDC,

Coronavirus Disease 2019 (Covid-19), *How to Protect Yourself*, March 18, 2020, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

Unfortunately, in the context of institutional confinement, social distancing is nearly impossible to implement and follow, given the large numbers of inmates held together in crowded, closed facilities. In light of this reality, courts around the country have recognized that the risk of Covid-19 to people held in jails and prisons "is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected." *See Basank v. Decker*, --- F. Supp. 3d ---, 2020 WL 1481503, at *3 (S.D.N.Y. March 26, 2020); *see also United States v. Rodriguez*, Case No. 2:03-cr-00271-AB-1, Docket Entry 136 (E.D. Pa. Apr. 1, 2020) (compassionate release request granted for many of the same reasons cited here including health concerns and BOP inability to protect inmate from exposure); *United States v. Harris*, --- F. Supp. 3d ---, 2020 WL 1503444, at ¶ 7 (D.D.C. Mar. 27, 2020); *United States v. Damian Campagna*, Case No. 1:16cr078, 2020 WL 1489829, at *2 (S.D.N.Y. Mar. 27, 2020); *Castillo v. Barr*, Case No. 5:20cv605, 2020 WL 1502864, at *2 (C.D. Cal. Mar. 27, 2020); *United States v. Kennedy*, Case No. 5:18cr20315-3, 2020 WL 1493481, at *2-3 (E.D. Mich. Mar. 27, 2020); *United States v. Garlock*, Case No. 18cr418, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020).

As Judge Middlebrooks has stated, it is not clear that any individual is safer from the virus while incarcerated. *United States v. Chopra*, 18-cr-20688-DMM (S.D. Fla. June 8, 2020). Prisons and jails have "long been known to be associated with

high transmission probabilities of infectious diseases."[11] Incarcerated individuals "are at special risk of infection" and "infection control is challenging."[12] Prisons and jails "contain high concentrations of people in close proximity and are breeding grounds for uncontrolled transmission [of infection]."[13] It is against this backdrop and for his dire health reasons that Mr. Lewis now seeks compassionate release.

### C. Many courts have released defendants with the same combination of extraordinary and compelling circumstances

Courts around the country have found that circumstances like the ones presented here are extraordinary and compelling reasons for release. *United States v. Rodriguez*, No. 2:03-cr-271, 2020 WL 1627331, at *2 (granting compassionate release because for a diabetic inmate, "nothing could be more extraordinary and compelling than this pandemic"); *United States v. Campagna*,

---

[11] Letter from Patricia Davidson, Dean, Johns Hopkins School of Nursing, et al., to Hon. Larry Hogan, Governor of Maryland (Mar. 25, 2020), https://bioethics.jhu.edu/wp-content/uploads/2019/10/Johns-Hopkins-faculty-letter-on-Covid-19-jails-and-prisons.pdf (co-signed by over 200 faculty members of Johns Hopkins Bloomberg School of Public Heath, School of Nursing, and School of Medicine).
[12] Open Letter from Gregg S. Gonsalves, Assistant Professor, Department of Epidemiology of Microbial Diseases, Yale School of Public Health, et al. to Vice President Mike Pence and Other Federal, State and Local Leaders 4 (Mar. 2, 2020), https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf (co-signed by 814 experts in public health, law and human rights); *see also* Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047-155 (2007), https://doi.org/ 10.1086/521910.
[13]Letter from Dr. Sandro Galea, Dean, Boston University School of Public Health, et al., to President Trump 1 (Mar. 27, 2020), https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to Trump.pdf (co-signed by numerous public health officials from leading medical and public health institutions).

No. 16-CR-78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the Covid-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."); *United States v. Perez*, 2020 WL 1546422, at *2 ("Perez meets th[e] requirement [of Application Note 1(D) ] as well, because he has weeks left on his sentence, is in weakened health, and faces the threat of a potentially fatal virus. The benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave"); *United States v. Edwards*, No. 6:17-cr-3-NKM, R. 134 (W.D. Va. Apr. 2, 2020) (granting compassionate release; "[h]ad the Court known when it sentenced Defendant in 2018 that the final 18 months of his term in federal prison would expose him to a heightened and substantial risk presented by the Covid-19 pandemic on account of Defendant's compromised immune system, the Court would not have sentenced him to the latter 18 months").

### D. Congress did not limit "extraordinary and compelling reasons" to a specific, enumerated set of circumstances.

The Court has the power to grant this request based on reforms made by the First Step Act of 2018.   Before December 2018, the power to request compassionate release rested solely in the hands of the Bureau of Prisons.   It was

almost never exercised.  *See, e.g.*, *United States v. Brown*, 411 F. Supp. 3d 446, 450-51 (S.D. Iowa Oct. 8, 2019) ("Until 2013, on average, 'only [twenty-four] inmates were released each year' through the BOP Program.") (quoting *Hearing on Compassionate Release and the Conditions of Supervision before the U.S. Sentencing Comm'n* (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice)); *see also The Answer is No: Too Little Compassionate Release in US Federal Prisons*, Human Rights Watch, (Nov. 2012) ("Although we do not know how many prisoners have asked the BOP to make motions on their behalf—because the BOP does not keep such records—we do know the BOP rarely does so. The federal prison system houses over 218,000 prisoners, yet in 2011, the BOP filed only 30 motions for early release, and between January 1 and November 15, 2012, it filed 37.").

Because of the BOP's inaction, in December 2018, the First Step Act revised the compassionate release statute and granted defendants direct access to the court. Section 3582(c)(1)(A) empowers the sentencing court to reduce a final term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." Congress has not defined what constitutes an extraordinary and compelling reason. The only substantive statutory limitations are that rehabilitation, standing alone, is not sufficient, 18 U.S.C. § 994(t), and that a reduction must be "consistent with the applicable policy statements issued by the Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement is clear that extraordinary and compelling reasons are not restricted to finite circumstances. The policy statement contains four provisions that delineate extraordinary and compelling reasons, including age, medical reasons, family circumstances, and a catchall provision. *See* U.S.S.G. § 1B1.13, app. n.1. The catchall provision, entitled "Other Reasons," broadly encompasses "an extraordinary and compelling reason other than, or in combination with" a person's age, medical condition, or family circumstances. *Id.* at 1(D).

This Court should join Courts around the country in finding extraordinary and compelling reasons exist for Mr. Lewis's immediate release based on a combination of factors including his pre-existing health conditions, the Covid-19 outbreak at Coleman and the risk he faces of severe complications or even death if he contracts Covid-19 while in prison.

## II.   Mr. Lewis's motion is timely and the Court has jurisdiction to review it

This motion is timely and there is no administrative exhaustion issue to debate. Mr. Lewis requested compassionate release from the warden at on May 29, 2020 and it was marked received by the warden on June 3, 2020. *Exhibit C.* Thus, because more than 30 days have elapsed since the receipt of his request by the warden, he is now permitted by statute to move before this Court for compassionate release. § 3582(c)(1)(A).  The language of the statue is plain and has been met.

### III.    The § 3553(a) Factors Weigh Strongly in Favor of Release

Finally, the Section 3553(a) factors also weigh towards granting this motion. Mr. Lewis has served over 2/3 of his lengthy sentence for possession of a firearm. His release date is four years away.  His conduct over the last nine years tells the story of someone who is working on changing his life and putting his past behind him.   As he attests in his letter, attached as Exhibit D, he listened to the Court at sentencing nine years ago and took the Court's words to heart. He has not had a disciplinary incident since his sentencing, over 8 and ½ years ago.  He has used his time in prison to educate himself and work.   He has progressively worked towards a reduced custody level, and went from Coleman Medium to Coleman Low and was supposed to be transferred to FCI Miami Camp before the coronavirus outbreak there stopped that from happening.  Undersigned counsel believes he was recently transferred back to Coleman Medium because of the outbreak there and the BOP's futile attempts to contain the rapid spread.  Nevertheless, his transfer back to Coleman Medium put him in the eye of the storm.

The 2/3 of his sentence that Mr. Lewis has already served meets the sentencing goal of deterrence.   When this Court sentenced Mr. Lewis, it could not have envisioned that his sentence would include incurring the great and unforeseen risk of severe illness or death brought on by a global pandemic.  Keeping Mr. Lewis in jail simply to serve a higher percentage of his sentence while risking his exposure to fatal

viral infection does not serve the § 3553(a) factors.

Moreover, his criminal history should not be a bar to his release, especially in light of his rehabilitation while in jail.  Courts both in this district and around the country have granted compassionate release to defendants with significant criminal history.  *See, e.g., United States v. Welch*, 09-cr-60212-KAM (S.D.Fla. May 21, 2020) (defendant released was an armed career criminal who had served 10 years of a 15 year sentence, suffered from diabetes and asthma); *United States v. Jaen*, 91-000814-FAM (S.D. Fla. July 6, 2020) (81 year old defendant sentenced to life released over government objections, government cited his history of violent crimes, including previous home invasion robbery and assault; Judge Moreno found that the purposes of deterrence had been achieved with his 26 years of time served and citing his programming in jail); *United States v. Curington*, 12-20115-MGC (S.D.Fla. July 8, 2020) (defendant sentenced as a career offender released due to health issues after serving approximately 2/3 of her sentence); *United States v. Cuchet*, 95-06277-WPD (S.D. Fla. July 2, 2020) (defendant sentenced as a career offender to 360 months released after serving 80% of his sentence).  Mr. Lewis's prior conduct should not be a bar to releasing him four years earlier than he otherwise would be released.

Mr. Lewis is now 40 years old.  A review of Mr. Lewis's progress report filed as Exhibit B tells the story of a man who has been working on himself for the near decade he's been in prison.  He has been taking classes throughout his incarceration, including  completing  certificates  in  Culinary  Arts,  Horticulture,  and  Custodial

Maintenance. He has also taken classes in preparing for re-entry, healthy living, and nutrition, among many others.   He has completed the non-residential Drug Treatment Program.  His current work assignment is as a visiting room orderly.  He has also worked as a Captain of the Bucket Brigade, Unit Orderly, Laundry Detail, Barber Shop, Safety Compliance Monitor and Compound Orderly.

Mr. Lewis expected his release date to come in July 2024, four years from now, and he has been working towards that day ever since he was incarcerated.  Mr. Lewis's heartfelt letter also informs that he has a support group backing him when he gets out.  Ms. Vivian Smith will be there to help him get on his feet and get whatever medical care he needs.  She is a hardworking and stable source of support. He also has his mother as a strong support helping him.  Both of them will help Mr. Lewis obtain the benefits and healthcare he needs upon release.

In addition, Mr. Lewis will be serving his 3 years of supervised release, so he will continue to be supervised by the probation office.  Furthermore, after discussing it with undersigned counsel, he is interested in applying for CARE Court if there is an opening for him, which would also provide heightened support and supervision. All of those factors support Mr. Lewis's release.

## IV.   Government's Position is not known

Undersigned counsel reached out to AUSA Kurt Lunkenheimer on July 8, 2020, after seeing the spike in cases at Coleman to let him know she would be filing this time sensitive motion and to request his position.  I provided all of the documents

23

attached as exhibits to the AUSA as well for his review.  He is currently reviewing

and has the matter under advisement, his position is not yet known.

### CONCLUSION

Mr. Lewis is at a real risk of life threatening complications or death if he

contracts Covid-19.  This presents extraordinary and compelling reasons to

release him at this time.  Mr. Lewis respectfully request that this Court sentence

Mr. Lewis to time served and allow him to begin serving his sentence of

supervised release at home.

Respectfully Submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:    _/s/ Aimee Ferrer_____
Aimee Ferrer
Assistant Federal Public Defender
Florida Bar No.  17827
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: (305) 530-7000
Email: aimee_ferrer@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on **July 10, 2020,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: _s/ Aimee Ferrer_