UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **11-CR-20631-SEITZ(s)**

**UNITED STATES OF AMERICA**

vs.

**JAUMON LEWIS,**

    **Defendant.**

_____/

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
TIME SENSITIVE MOTION FOR COMPASSIONATE RELEASE**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Opposition to the defendant Jaumon Lewis' (the "Defendant") Time Sensitive Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1). This Court should deny the Defendant's motion due to the fact that while that while the defendant presents at least two Center for Disease Control risk factors for COVID-19 that present an extraordinary and compelling reason allowing compassionate release under the statute, he has failed to demonstrate that the factors in 18 U.S.C. § 3553(a) justify his release, or that he is not a danger to the community under 18 U.S.C. § 3142(g), under the United States Sentencing Guidelines ("U.S.S.G.") policy statement, U.S.S.G. § 1B1.13.

    I.    **Factual Background**

        a.  *Indictment and Plea*

On September 9, 2011, a grand jury sitting in the Southern District of Florida returned an indictment against the Defendant, charging him with being a felon in possession of a firearm and ammunition on March 5, 2010 (count one), possession with the intent to distribute crack cocaine on March 5, 2010 (count two), and possession of a firearm in furtherance of a drug trafficking

crime on March 5, 2010 (count three). [ECF No. 7]. On October 14, 2011, a grand jury sitting in the Southern District of Florida returned a superseding indictment against the Defendant, charging him with the same three crimes and adding a fourth crime for being a felon in possession of a firearm and ammunition on August 30, 2011 (count four). [ECF No. 17]. Thereafter, on December 8, 2011, the Defendant pled guilty to count one of the superseding indictment in exchange for dismissal of the remaining counts. [ECF Nos. 24, 26, and 27]. In his signed Plea Agreement, the defendant agreed that he had been convicted of the following offenses:

> (a)   Armed robbery with a firearm or deadly weapon, in violation of Florida Statutes 812.13(2)(A) and 775.087, Miami-Dade County, Florida Case Number F03-012116;
> (b)   Aggravated assault with a firearm, in violation of Florida Statutes 784.021(1)(a) and 775.087, Miami-Dade County, Florida Case Number 99-2878; and.
> (c)   Felony battery, in violation of Florida Statue 784.041, Miami-Dade County, Florida Case Number 03-012114.

[ECF No. 26]. As part of his plea negotiations with the government, the Defendant signed a factual proffer in which he admitted his criminal conduct. [ECF No. 27]. In the factual proffer, the defendant admitted the following;

> On March 5, 2010, law enforcement officers drove their vehicle to 2070 Washington Avenue, Miami, Florida. Defendant, JAUMON R. LEWIS ("LEWIS") was standing outside the duplex located at 2070 Washington Avenue. The law enforcement officers were wearing tactical vest that read "POLICE" on the front and back. As the law enforcement officers exited their vehicle, they announced that they were police officers.
> When LEWIS observed the law enforcement officers exit their vehicle, he began to flee along the east side of the duplex at 2070 Washington Avenue. The officers followed LEWIS. Eventually, the pursuing law enforcement officers caught up with him and the officers ultimately handcuffed and arrested LEWIS on the ground. As the police officers brought LEWIS to his feet, they noticed a bulge in the crotch area of his pants. A search incident to arrest revealed a loaded semi-automatic Smith & Wesson pistol in the crotch area of LEWIS's blue jeans that contained a stainless steel magazine.

[ECF No. 27].

b. *Presentence Investigation Report and Sentencing Hearing*

In advance of the Defendant's sentencing hearing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). In that report, the defendant's offense conduct, which he did not object to, was described in paragraph 9, and included the facts that the Defendant was encountered and eventually stopped by police officers in possession of a firearm and ammunition after observing him partake in a hand-to-hand narcotics transaction. [PSR at ¶ 9]. The Defendant fled when the police officers approached and was seen throwing something as he ran. [*Id.*]. The objects that he threw were recovered and determined to be 31 baggies of crack cocaine. [*Id.*]. The PSR also listed the defendant's prior felony convictions: (1) Case No. F99002878: aggravated assault with a firearm, and resisting an officer without violence; (2) Case No. F03012112: fleeing/attempting to elude a police officer, possession of cocaine and possession of cannabis/20 grams or less; (3) Case No. F03012114: felony battery; and (4) Case No. F03012116: armed robbery with a firearm/deadly weapon. [PSR at ¶ 10].

The PSR further discussed those prior convictions. [PSR at ¶¶ 26-29]. Two of those cases, Case No. F99002878 and F03012116, involved the Defendant threatening individuals with the firearms. Three of those convictions, Case No. F03012114 (felony battery), Case No. F03012112 (fleeing/attempting to elude a police officer, possession of cocaine and possession of cannabis/20 grams or less), and Case No. F03012116 (armed robbery with a firearm/deadly weapon), all occurred while the Defendant was under community control for Case No. F99002878. [PSR at ¶ 26].

At the time of his arrest, the Defendant had been living with his then girlfriend (not Vivian Smith) and their one–year old daughter. [PSR at ¶ 41]. They had been living together for four years. [*Id.*].

Based on the Defendant's three prior convictions for violent felonies, the Defendant was designated an armed career criminal. Pursuant to § 4B1.4(c)(2), and assigned a criminal history Category VI, as the defendant used or possessed the firearm or ammunition in connection with a controlled substance offense. [*Id.* at ¶ 31]. The Defendant's guideline range was 188 months to 235 months imprisonment and carried a fifteen-year mandatory minimum sentence. [*Id.* at ¶¶ 58 and 59]; *see also* 18 U.S.C. § 924(e) (2000). After the benefit of a sentencing hearing and consideration of the factors enumerated in § 3553(a), the Court sentenced the Defendant to 180 months prison followed by 5 years of supervised release. [ECF No. 30]. The Defendant is currently serving his sentence at FCI Coleman Medium in Sumpterville, Florida.

c. *The Defendant's Request for Compassionate Release*

The Defendant requested compassionate release from the Warden of FCI Coleman Low and on May 12, 2020 that request was denied. *See* Exhibit 1. The defendant appealed and that appeal was denied on June 4, 2020. [ECF No. 38, Exhibit B]. The Defendant is now housed at FCI Coleman Medium per the Bureau of Prisons' website.

The Defendant argues that his medical conditions constitute extraordinary and compelling circumstances in light of COVID-19 and that the § 3353(a) factors favor his release. [ECF No. 38]. The Defendant also argues that his situation is particularly dire because he is housed at FCI Coleman Medium, and therefore, the Defendant "in grave and present danger of contracting

4

the virus and suffering severe complications."[1] [ECF No. 38 at 15]. The Defendant claims that the § 3353(a) factors favor his release in that while incarcerated he has bettered himself through the opportunities available to him in prison, that he has served approximately two-thirds of his sentence which would deter him from further criminal action, and that he has a support network to help him once he is released from prison. [ECF No. 38 at 21-23].

## II.     **BOP's Response to the COVID-19 Pandemic**

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time and that has resulted in massive disruption to our society and economy. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge

BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, *Updates to BOP COVID-19 Action Plan: Inmate Movement* (Mar. 19, 2020), *available at* https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

Indeed, BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, *Pandemic Influenza Plan-Module 1: Surveillance and Infection Control* (Oct. 2012), *available at* https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a multi-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id*. at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January. At that time, the agency established a working group to develop policies in consultation

---

[1] A check of the number of cases of COVID-19 at FCI Coleman Medium on July 21, 2020, revealed that 114 inmates and 21 staff members have been infected with COVID-19. *See* https://www.bop.gov/coronavirus/.

5

with subject matter experts in the CDC, including by reviewing guidance from the World Health Organization ("WHO"). On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.

BOP's operations are presently governed by Phase Seven of the Action Plan. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training. Additionally, all staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

Moreover, social and legal visits were stopped as of March 13, 2020, and remain suspended in order to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate to incarcerate sentenced criminals to protect the public.

III. **Legal Standard**

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). Instead, "[t]he authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010). Under 18 U.S.C. § 3582(c)(1)(A)(i), the so-called "compassionate release" statute, "the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary

7

and compelling reasons warrant a reduction." *United States v. Pitcock*, No. 15-CR-60222-BLOOM, 2020 WL 3129135, at *2 (S.D. Fla. June 12, 2020) (citing U.S.S.G. § 1B1.13). "The Sentencing Guidelines add that the Court should reduce a sentence only if the 'defendant is not a danger to the safety of any other person or to the community.'" *Id.* (citing U.S.S.G. § 1B1.13).

Section 3582 sets out the order in which this Court should analyze a motion for compassionate release:

> First, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Second, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id.* Third, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And fourth, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR-ALTMAN, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). The Defendant bears the burden of establishing the requirements of §3582, and even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted." *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).[2]

### IV.  **Argument**

This Court should deny the Defendant motion for a reduction in his sentence because he has not met his burden under § 3582(c)(1)(A)(i). Specifically, the Defendant has failed to demonstrate that the § 3553(a) factors favor his release. Additionally, the Defendant has failed to show that he is not a danger to the community under the relevant § 3142(g) factors.

---

[2] The government agrees that the Defendant has satisfied § 3582's exhaustion requirement.

8

> a. *The Defendant's Medical Conditions Do Constitute Extraordinary and Compelling Circumstances*

The United States concedes that the Defendant's medical conditions, particularly his heart issues and type 2 diabetes, when viewed in conjunction with the threat of COVID-19 and his presence at FCI Coleman Medium, do constitute extraordinary and compelling circumstances under § 3582(c)(1)(A)(i). The United States Sentencing Commission,[3] defines "extraordinary and compelling circumstances" as:

**(A) Medical Condition of the Defendant.**

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>> (I) *suffering from a serious physical or medical condition*,
>> (II) suffering from a serious functional or cognitive impairment, or
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> *that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.*

U.S.S.G. § 1B1.13 cmt n.1 (emphasis added).

---

[3] "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, *shall describe what should be considered extraordinary and compelling reasons for sentence reduction*, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *See* 18 U.S.C. § 944(t) (emphasis added).

A review of the medical records of the Defendant show that at least two medical conditions that the Centers for Disease Control ("CDC") have found to increase the risk of severe illness from COVID-19, and he is not expected to recover from those conditions. U.S.S.G. § 1B1.13 cmt n.1(A)(ii). Therefore, the United States concedes that the Defendant presents an extraordinary and compelling reason allowing compassionate release under the statute and guideline policy statement, even if those conditions in ordinary times would not allow compassionate release. However, as stated below the United States does not believe that the Defendant qualifies for release under the totality of the policy statement in U.S.S.G. § 1B1.13.

      b.  *The § 3553(a) Factors Weigh Heavily Against the Defendant's Release*

The Defendant's motion should be denied because the § 3553(a) factors weigh heavily against the Defendant's release. The § 3553(a) factors include the nature and circumstances of the offense; the history and characteristics of a defendant; the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the sentences available; and the guideline range established under the Sentencing Guidelines. 18 U.S.C. § 3553(a).

First, the nature and circumstances of the offense do not favor the Defendant's release. The Defendant, despite having served seven years in prison and having been convicted of two offenses involving his possession of firearms and using them to threaten individuals, possessed a firearm while dealing crack cocaine. [ECF No. 27]; [PSR at ¶ 9]. The Defendant clearly posed a danger to others while in possession of the firearm and ammunition while involved with possessing crack cocaine. The Defendant possessed the firearm, because he was willing to use it if necessary. Thus, the nature and circumstances of the offense are serious and weigh against release.

Second, the history and characteristics of the Defendant are also unpersuasive. The Defendant is an armed career criminal with three prior state felony convictions for violent felonies. [PSR at 22, 26, 28 and 29]. Two of those prior convictions involved the Defendant threatening individuals with firearms: Florida State Case Nos. F99002878 and F03012116. [PSR at ¶¶ 26 and 29]. Case No. F03012116 occurred after the Defendant already had been punished for threatening an individual with a firearm. [PSR at ¶ 29]. He clearly did not learn from his prior actions and is a danger to the community. Two times, he took actions that threatened individuals with a firearm, one time patting that person down and taking money from them. [*Id.*] Clearly, this is not an individual who abides by the law and values the lives of others. In fact, after being initially sentenced in Case No. F99002878, the Defendant continued to violate the law, including the continued use of a firearm as discussed above and as evidence by the underlying criminal conduct here. [PSR at ¶¶ 26 - 29]. And, after his arrest on March 5, 2010, on August 30, 2011, the Defendant was found by law enforcement to be near another firearm. *See* Count 4 of Superseding Indictment. [ECF No. 17.] Therefore, the history and characteristics of the Defendant weigh against release.

Third, the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant do not favor the Defendant's release. The Defendant has a history of illegally possessing firearms as evidenced by the PSR and the underlying conviction, despite his arrests and convictions. He served seven years in prison for his crimes prior to his arrest and sentence in this criminal case, and he was not deterred from possessing a firearm again or for distributing crack cocaine on the streets. It cannot be assumed that the eight plus years he has served in federal prison

11

will deter him from acting this way again in the future. The PSR, nor the motion or its attachments, contain concrete evidence that he has been adequately deterred from committing future crimes.

As to where he will live if this motion is granted, the Defendant states he will live with his fiancée Vivian Smith. [ECF No. 38 at 4 and 23]. Notably, Ms. Smith was not mentioned in the Defendant's PSR in 2012 when it was drafted and the Defendant was incarcerated in this criminal case. When the Defendant committed the underlying crime, he was living with his girlfriend and their one-year old daughter. [PSR ¶ 40-41]. His mother was also around at that time. The need to care for his daughter and her mother did not deter him from committing crimes, so it is hard to believe, that Ms. Smith and the Defendant's mother can deter him from future criminal conduct now. Therefore, the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant weigh against release.

Finally, the Defendant's sentencing guideline range disfavors a sentence reduction. After considering the applicable enhancements and reductions to the Defendant's base offense level, the Defendant had an offense level of 31 out of a maximum of 43. *See* [PSR at ¶ 24]. This offense level coupled with the Defendant's criminal history category of VI—the highest criminal history category—resulted in a sentenced guideline range of 188 months to 235 months imprisonment, and a mandatory minimum sentence of 180 months imprisonment. *See* [PSR at ¶¶ 58-59]; *see also* U.S.S.G Sentencing Table. At sentencing, the Court varied downward and sentenced the Defendant to the mandatory minimum sentence of 180 months imprisonment. Accordingly, the § 3553(a) factors weigh heavily against the Defendant's release, and his motion should be denied.

      c. *The Defendant is a Danger to the Community Under 18 U.S.C. § 3142(g)*

Lastly, the Defendant also fails to establish that he is not a danger to the community under § 3142(g). In determining whether an individual is a danger to the community, § 3142(g) requires courts to consider, among other factors, the nature and circumstance of the offense, including whether it involves a controlled substance or firearm; the history and characteristics of the defendant, including their criminal history; and the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

As discussed above, all of these factors weigh towards the fact that the Defendant is a danger to the community. The criminal conduct for which he was arrested involved both controlled substances and a firearm. In addition, he has had several violations of community control in his past, as well as other criminal convictions involving firearms where he threatened individuals, one in which he robbed an individual. While the government applauds the steps he has taken to better himself while in prison, he cannot overcome the factors this Court must consider in § 3142(g). Accordingly, the Defendant has failed to meet his burden under § 3582(c)(1)(A)(i), and his motion must be denied.

## V. **Conclusion**

Accordingly, because the Defendant has failed to show that the § 3553(a) factors justify his release, or that he is not a danger to the community under § 3142(g), the Defendant's motion should be denied.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: */s/ Kurt K. Lunkenheimer*
KURT K. LUNKENHEIMER
Assistant United States Attorney
Court ID No. A5501535
U.S. Attorney's Office - SDFL
99 N.E. 4th Street, Suite 600
Miami, FL 33132-2111
Telephone: (305) 961-9008
Facsimile: (305) 536-4699
Email: Kurt.Lunkenheimer@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 21, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

*/s/ Kurt K. Lunkenheimer*
KURT K. LUNKENHEIMER
Assistant United States Attorney